**MINNESOTA MINING AND MANUFACTURING COMPANY, Petitioner,**

v.

**NISHIKA LTD., Lentec Corporation, American 3D Ltd., and Nishika Manufacturing (H.K.) Ltd., Respondents.**

No. 94–1124.

Supreme Court of Texas.

Argued March 19, 1996.

Decided Oct. 2, 1997.

As Corrected Oct. 30, 1997.

Jo Ben Whittenburg, Gilbert I. Low, Beaumont, Harry M. Reasoner, Page I. Austin, Marie R. Yeates, Margaret C. Ling, Penelope E. Nicholson, Sandra Garza Rodriguez, Richard L. Flowers, Jr., Houston, Robbi B. Hull, Austin, for Petitioner.

Mary Kathryn Sammons, Randall W. Wilson, James B. Sales, Roger Townsend, Jennifer Brunch Hogan, Houston, Walter Humphrey, Thomas A. Thomas, Beaumont, Stephen D. Susman, Dallas, William Hawkland, Baton Rouge, LA, Richard Speidel, Chicago, IL, William Powers, Jr., Pamela Stanton Baron, Austin, for Respondents.

GONZALEZ, Justice, delivered the opinion for a unanimous Court.

This is a breach of warranty case. Four companies involved in the three-dimensional photography industry sued Minnesota Mining and Manufacturing Company (3M) in a Texas trial court. The companies—Nishika Manufacturing (H.K.) Limited, American 3D (H.K.) Limited, LenTec Corporation, and Nishika Limited (collectively "the Nishika Plaintiffs")—alleged that 3M breached express and implied warranties, causing each business to lose profits. A jury agreed and returned findings favorable to the plaintiffs. Applying Minnesota law, the trial court rendered a lump-sum damages award in their favor. The court of appeals affirmed in all relevant respects. 885 S.W.2d 603. On rehearing, we granted the application for writ of error.

After oral argument, this Court concluded that Minnesota law governs this case, but that no controlling precedent existed on an essential question of Minnesota law. Accordingly, we issued a per curiam opinion certifying two questions to the Supreme Court of Minnesota. We inquired (1) whether a plaintiff who never used, purchased, or otherwise acquired goods from the seller could recover lost profits unaccompanied by physical injury or property damage, and (2) whether the Nishika Plaintiffs could recover damages jointly as a single economic unit. 955 S.W.2d 853, 858 (Tex.1996) (per curiam). Minnesota's high court accepted certification and answered both questions negatively. *Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 565 N.W.2d 16, 23 (Minn.1997). We now apply that decision to dispose of this appeal. We reverse the court of appeals' judgment, render judgment that Nishika Manufacturing and American 3D take nothing, and remand the balance of the case for a new trial.[1]

## I. CHOICE OF LAW

■ In its briefs and at oral argument, 3M contended that the trial court erred by applying Minnesota law. We rejected this argument in our previous opinion, but deferred explaining our decision until the Minnesota Supreme Court answered our certified questions. 955 S.W.2d at 857–58. When evaluating choice-of-law issues in contractual disputes, we consider the facts of the case under the "most significant relationship" test set forth in section 188 of the *Restatement (Second) of Conflicts of Laws. See Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex.1991); *DeSantis v. Wackenhut*, 793 S.W.2d 670, 679 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). We apply that test here to fully explain the reasons for our conclusion that Minnesota law applies.

Under section 188 of the *Restatement*, we determine contractual rights and duties by the law of the state with the most significant relationship to the transaction and the parties. RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188(1) (1971). When, as here, the parties have not expressly chosen the applicable law, we consider the following contacts in determining which law governs their controversy:

(a) the place of contracting;

---

1. The facts and issues involved in this case are more fully summarized in this Court's previous opinion. *See* 955 S.W.2d at 853–55.

(b) the place of negotiation;

(c) the place of performance;

(d) the location of the contract's subject matter; and

(e) the parties' domicile, residence, nationality, place of incorporation, and place of business.

*Id.* § 188(2).

As the Court noted previously, 955 S.W.2d at 856, this case involves contacts in at least seven jurisdictions: Minnesota, Nevada, Oklahoma, Georgia, Pennsylvania, Texas, and Italy. Minnesota is 3M's domicile and its principal place of business. Two of the plaintiffs, Nishika Limited and American 3D, are based in Nevada. To support its contention on appeal that the trial court should have applied Nevada law, 3M points to only one other contact linking this case with Nevada: that Nevada is the state where Nishika Limited used the new emulsion to develop the 3–D photographs.

Although the Nevada contacts of domicile and product use are meaningful, 3M's argument ignores other quality contacts Minnesota had with this transaction. For example, the parties negotiated and entered into this agreement in Minnesota. The initial meeting at which the parties formed their business relationship took place in Minnesota, as did several follow-up meetings. No face-to-face negotiations occurred in Nevada. Moreover, 3M at least partially performed the contract in Minnesota by developing, producing, and testing the backcoat sauce there. These Minnesota contacts are significant because of their relevance to domestic warranty law and the policies underlying that law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971); *see also* WEINTRAUB, COMMENTARY ON THE CONFLICT OF LAWS § 7.3D (1986). Its status as the place of negotiation and the place of performance favors Minnesota as the state whose law should apply. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(3) (1971).

We must also evaluate these contacts in the context of certain policy factors listed in section 6 of the *Restatement. Maxus Exploration*, 817 S.W.2d at 53; *see* RESTATEMENT

(SECOND) OF CONFLICT OF LAWS § 188(1) (1971). These principles are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971). However, policy analysis is difficult in this case because few of these factors guide us in a discernible way. For example, Texas's relevant policies bear little on this case. Unlike Minnesota and Nevada, Texas has not adopted one of the alternatives that section 2–318 of the Uniform Commercial Code presents. *See* U.C.C. § 2–318 permanent editorial board note; Stallworth, *An Analysis of Warranty Claims Instituted by Non–Privity Plaintiffs in Jurisdictions That Have Adopted Uniform Commercial Code Section 2–318 (Alternative A)*, 20 PEPP. L.REV. 1215, 1229 (1993). Rather, the Texas Legislature has left the issue of "whether anyone other than a buyer may take advantage of an express or implied warranty . . . to the courts for their determination." TEX. BUS. & COM.CODE § 2.318.

Similarly, we are unable to discern a significant difference between the respective policies of Minnesota and Nevada on this issue. Of the American Law Institute's three suggested versions of section 2–318, Nevada has adopted Alternative A, and Minnesota has adopted Alternative C. Before the Minnesota Supreme Court's decision on our certified questions, it was unclear whether applying Alternative C, as opposed to Alternative A, would be outcome determinative. But even if Minnesota law holds product manufacturers to a higher warranty standard than Nevada law, both states have attempted to strike a fair balance between

the competing interests of manufacturers and consumers. In this case, a manufacturer domiciled in Minnesota allegedly inflicted economic injury on two Nevada consumers and two consumers from other locales. We cannot say that Minnesota's policy, even if different, overrides Nevada's in this area. Under these circumstances, we give greater weight to other factors, such as the place of contracting, negotiation, and performance.

The parties' justified expectations weigh in favor of Minnesota. The dealings between 3M and the Nishika Plaintiffs spanned several states, and the parties did not bargain outright for the law to be applied if a legal dispute arose between them. As noted previously, 3M engaged in several rounds of negotiations, entered into a contract, and performed at least part of the agreement in Minnesota. Although the Nishika Plaintiffs sued 3M in Texas, they just as easily could have sued in Minnesota, 3M's home state. Given the relative importance of the Minnesota contacts, all parties could have anticipated that suit would be brought in Minnesota and that Minnesota law would govern. 3M has not established any reasonable expectation that Nevada law would control this litigation.

For these reasons, we concluded that Minnesota has the most significant relationship to this transaction and these parties. Accordingly, we rejected 3M's argument that the court of appeals erred by affirming the trial court's judgment on this issue. 955 S.W.2d at 856.

## II. LIABILITY UNDER MINNESOTA LAW

We consider next the extent to which the Nishika Plaintiffs may recover damages under Minnesota's version of Uniform Commercial Code section 2–318. That statute provides:

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

MINN.STAT.ANN. § 336.2–318 (Supp.1997).

Both here and in the court of appeals, 3M has argued that section 336.2–318 prohibits two of the Nishika Plaintiffs, Nishika Manufacturing and American 3D, from recovering lost profits as a matter of law. Considering evidence that 3M knew about the Nishika Plaintiffs' multilevel marketing system and that these interdependent businesses each relied upon 3M's film-development process, the court of appeals disagreed. 885 S.W.2d at 625–26. In the court of appeals' view, section 336.2–318 allows any foreseeable plaintiff who is injured by the defendant-seller's breach of warranty to recover damages resulting from that breach, economic or otherwise. *See id.* As our Court noted before, some authority supports this interpretation, but no Minnesota case has applied section 336.2–318 so broadly. 955 S.W.2d at 856–57. To avoid erroneously interpreting Minnesota law, we called upon the Minnesota Supreme Court to resolve this issue.

Answering our first certified question, Minnesota's high court rejected the court of appeals' reading of section 336.2–318, stating:

[T]hose who purchase, use, or otherwise acquire warranted goods have standing to sue for purely economic losses. Those who lack any such connection to the warranted goods must demonstrate physical injury or property damage before economic losses are recoverable.

*Minnesota Mining,* 565 N.W.2d at 21. We now apply this rule here.

Nishika Manufacturing and American 3D never dealt directly with 3M, and neither company ever used or otherwise acquired 3M's goods. Moreover, the Nishika Plaintiffs sought only economic losses—lost profits—under their single-economic-unit theory. Thus, to recover, those plaintiffs lacking a direct connection to the warranted goods had to prove physical injury or property damage resulting from 3M's actions. There is no evidence that 3M caused Nishika Manufacturing or American 3D to suffer either physical injury or property damage. "[N]oncontracting parties who never used,

purchased, or otherwise acquired the seller's warranted goods may not seek lost profits, unaccompanied by physical injury or property damage, for breach of warranty under the statute." *Minnesota Mining,* 565 N.W.2d at 22. Accordingly, we hold that Nishika Manufacturing and American 3D cannot recover from 3M as a matter of law.

## III. THE DAMAGES SUBMISSION

The jury found that 3M committed an independent breach of warranty with respect to each plaintiff in this suit. But the trial court's single damages submission, Question 13, did not distinguish the amounts the Nishika Plaintiffs should recover individually. Instead, Question 13 asked the jury to award one lump sum as damages for all four Nishika Plaintiffs.

In our certification to the Minnesota Supreme Court, we inquired whether the Nishika plaintiffs could recover damages jointly as a single economic unit. The court held that the Nishika plaintiffs could not jointly recover damages for lost profits under Minnesota law, but acknowledged that Texas courts could better determine whether altering the damages award or a new trial is appropriate. Indeed, Texas procedural law governs our decision whether to render or remand this case. *See Penny v. Powell,* 162 Tex. 497, 347 S.W.2d 601, 602 (1961). In this connection, 3M contends that the Nishika Plaintiffs' failure to segregate their damages individually in the charge entitles it to a take-nothing judgment against all plaintiffs. Before we decide this question, however, we must discuss the Nishika Plaintiffs' argument that 3M waived its complaint.

### A. Preservation of Error

As discussed in the Court's previous opinion, 3M objected to the form of the damages question, arguing that some of the Nishika Plaintiffs were prohibited as a matter of law from recovering and that the trial court would be unable to ascertain which plaintiffs would be entitled to an award. *See* 955 S.W.2d at 855. Contesting the Nishika Plaintiffs' single-economic-unit theory of recovery, 3M then specifically argued that the lump-sum damages question should be "bro-

ken out as to each of the Nishika/LenTec plaintiffs." The court of appeals held that 3M waived any error because "[t]he objection is not distinct." 885 S.W.2d at 623.

However, from our review of the record, 3M repeatedly complained to the trial judge that American 3D and Nishika Manufacturing, the two plaintiffs who never dealt directly with or bought any products from 3M, had no standing to recover for breach of warranty. 3M's complaint, both in the trial court and in this Court, essentially was that no evidence supported a finding that American 3D and Nishika Limited could recover damages under Minnesota law. 3M's objection pointed out distinctly the nature of 3M's complaint about the damage question's form. Therefore, the objection was sufficient on its face to preserve error. *See* TEX.R.CIV.P. 274.

### B. Remand or Render?

Because of the Minnesota Supreme Court's decision, we have agreed with 3M that Nishika Manufacturing and American 3D cannot recover damages under Minnesota warranty law. Accordingly, we render judgment that those two plaintiffs take nothing. But 3M asserts that we should also render judgment against Nishika Limited and LenTec, the plaintiffs who purchased and used 3M's goods, because no evidence supports the damages element of their warranty claims. In reviewing this complaint, we consider only the evidence and reasonable inferences supporting the jury's damages finding. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). If more than a scintilla of evidence favors it, 3M's legal sufficiency challenge must fail. *See Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992).

3M does not dispute the jury's specific findings that it breached a warranty to both Nishika Limited and LenTec. Instead, 3M argues that the Nishika Plaintiffs' evidence that they lost $97 million in profits collectively as a result of this breach cannot support a damage award to any of the four businesses individually. Given the structure of the damages question, we cannot differentiate the amounts, if any, that Nishika Limited and

LenTec should recover. But even though we agree that each plaintiff should recover only its own damages, 3M's rendition argument is inconsistent with this Court's recent authority.

In *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1 (Tex.1991), the trial court's charge did not segregate attorney's fees according to the costs of suing each individual defendant. As in this case, the court submitted the charge over Stewart Title's objection on the failure to segregate. *Sterling,* 822 S.W.2d at 10. Analyzing the argument for rendition, we noted that several court of appeals decisions supported this view. Nonetheless, we rejected the rationale for these decisions: that "evidence on total attorney's fees without segregation is no evidence of segregated attorney's fees." *Id.* at 11. After concluding that the attorney's fees at issue were capable of segregation, we held that "[e]vidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated attorney's fees, i.e. what a reasonable attorney's fee would be for the entire case indicates what the segregated amounts should be." *Id.* at 12. Consequently, we remanded the issue to the trial court for further consideration. *See also International Sec. Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546–47 (Tex.1973) (holding that attorney's-fee award erroneously based on evidence of unsegregated fees compels remand).

In *Texarkana Memorial Hospital, Inc. v. Murdock,* 946 S.W.2d 836 (Tex.1997), we applied the *Sterling* rule to remand a case involving unsegregated actual damages. There, the jury awarded the plaintiff $500,-000 for past medical expenses, even though her evidence did not link that damage amount specifically to the defendant hospital's negligence. On appeal, the defendant raised a legal sufficiency challenge to the jury's damage award. After concluding from the evidence that the defendant caused at least some of the plaintiff's damages, we determined that the appropriate amount could be measured and proved with certainty by medical expert testimony. *Id.* at 840–41. Guided by *Sterling,* we remanded the cause to allow the plaintiff the chance to do just that. *See id.* at 841 (citing *Sterling,* 822 S.W.2d at 11).

Applying *Sterling* and *Murdock* here, we conclude that remand is both appropriate and necessary. 3M expressly contends that the Nishika Plaintiffs' evidence of their total damages is no evidence of segregated damages, an argument we considered and rejected in *Sterling.* Under the rationale of that case, confirmed in *Murdock,* evidence of unsegregated damages among claims or parties is more than a scintilla of evidence of segregated damages. *See Sterling,* 822 S.W.2d at 12; *see also Murdock,* 946 S.W.2d at 841. Thus, although Nishika Manufacturing and American 3D cannot recover from 3M, the remaining Nishika Plaintiffs have carried their burden under the no-evidence standard of review. When supported by legally sufficient evidence, an unsegregated damages award—whether in the form of attorney's fees or actual damages—ordinarily requires a remand. *Cf. Spencer v. Eagle Star Ins. Co.,* 876 S.W.2d 154, 158 (Tex.1994) (ordinarily, reversal for error in the charge requires a remand).

Moreover, 3M has contended throughout this litigation that most of the $97 million in damages are attributable to two of the four Nishika Plaintiffs. This argument admits that the individual plaintiffs' damages are capable of segregation, a factor we also emphasized in remanding both *Sterling* and *Murdock.* The unsegregated damages that the jury awarded merely represent what the four Nishika Plaintiffs might have received collectively if they all could recover under Minnesota warranty law. Because the Nishika Plaintiffs presented legally sufficient evidence that 3M's breach of warranty caused them damages, Nishika Limited and LenTec should be afforded the opportunity to develop their specific damages evidence further. *See Murdock,* 946 S.W.2d at 841; *Sterling,* 822 S.W.2d at 11; *see also Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 668–69 (Tex. 1996) (remanding case for new trial, even though jury charge did not distinguish between market value of real property and personal property, because plaintiffs presented legally sufficient evidence that they incurred some loss).

A remand for a new trial solely on the damages issue is not appropriate in this case. Our rules provide that "a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested." TEX. R.APP.P. 81(b)(1). 3M has contested its liability to Nishika Limited and LenTec throughout this litigation. The damages these plaintiffs suffered, if any, are unliquidated. Remand of both liability and damages is mandatory under these circumstances. *See* TEX.R.APP.P. 81(b)(1); *Redman Homes,* 920 S.W.2d at 669 (Tex.1996).

## IV. SUMMARY

Applying the Minnesota Supreme Court's decision on our certified questions, we reverse the judgment of the court of appeals and render a take-nothing judgment against Nishika Manufacturing and American 3D. Because of our holding on the jury-submission issue, however, we have determined that Nishika Limited and LenTec should receive a new trial. Accordingly, we remand their claims to the trial court for further proceedings consistent with this opinion.