NO.
12-06-00233-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN THE ESTATE OF           §                      APPEAL FROM THE 

 

JAMES W. KAPPUS,            §                      COUNTY COURT AT LAW

 

DECEASED  §                      ANDERSON
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            Sandra
Kappus, ex-wife of the deceased, James W. Kappus, complains of certain trial
court rulings entered in the probate of James’s estate.  In four issues, Sandra claims the trial court
erred in its division of the estate’s primary asset and by failing to remove
John Kappus as independent executor of the estate and as trustee of a
testamentary trust created by James’s will. 
We affirm in part and reverse and render in part.

 

Background

            In the
1980s, James, his brother, John, and their father formed Kappus Farms, a
partnership.  Kappus Farms purchased a
49.482 acre tract of land in Anderson County. 
After their father died, James and John allowed the partnership to
dissolve, but they continued to own the Anderson County property together.  James and Sandra Kappus were married in the
early 1990s.  They had two children,
Casey Lynn Kappus and James Montana Kappus. 
Their 2004 divorce was contested, and Sandra’s relationship with James’s
family was very strained after the divorce. 
Over the years, several improvements were made to the Anderson County
property; some solely by James, some by James and Sandra, and some solely by
John.

            After his
divorce from Sandra, James executed a new will that named John as independent
executor.  The will also created a
testamentary trust.  Casey Lynn and James
Montana are the beneficiaries of the trust and John is the trustee.  After James’s death in 2005, John began
probate proceedings and was appointed independent executor.  He intended to sell the Anderson County
property and split the proceeds of the sale equally between himself and the
estate.  John found a buyer willing to
pay $110,000.00 and assume a debt of approximately $7,000.00 for one of the
improvements on the property, a double wide mobile home.

            Sandra, on
behalf of her children, opposed the proposed distribution of the proceeds from
the sale of the property.  Initially, she
obtained an injunction to stop the sale. 
At the final hearing, however, she testified that she did not oppose the
sale, only the distribution sought by John. 
Sandra presented evidence that James had placed improvements on the
property, including a single wide mobile home and a double wide mobile home,
that added value to the property.  All
parties agreed that the best alternative for selling the two mobile homes was
to sell them with the property.

            Sandra also,
on behalf of her children, sought to have John removed as independent executor
because of alleged conflicts of interest, waste, and mismanagement of
funds.  She presented evidence that John
owns a portion of the Anderson County property and the remaining portion of the
property belongs to the estate. 
Additionally, she presented evidence that John did not handle a debt on
a vehicle properly.  Finally, she said
she felt that John’s animosity toward her would make the situation
unworkable.  Based on many of the same
reasons, Sandra also sought to have John removed as trustee of the testamentary
trust created in James’s will.

            After
hearing argument and testimony, the trial court found that the estate owned
58.59% of the Anderson County property and John owned the remaining
41.41%.  The trial court denied the
application to remove John as independent executor and trustee.  Sandra requested findings of fact and
conclusions of law, which the trial court prepared and signed.  This appeal followed.

 

Anderson
County Property








            In her first
issue, Sandra contends the evidence is legally and factually insufficient to
support the trial court’s division of the Anderson County property.  She argues that the estate owns at least
63.45% of the property instead of 58.59% as determined by the trial court, for
a difference of 4.86%.  

Standard of Review

            When a trial
court’s findings are challenged, we review the entire record using the same
standards of legal and factual sufficiency that we apply to review a jury’s
findings.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  An
omitted finding, supported by the evidence, may be supplied by a presumption
that it supports the judgment.  Black
v. Dallas County Child Welfare Unit, 835 S.W.2d 626, 630 n.10 (Tex.
1992).  A trial court’s conclusions of law
are reviewed de novo as legal questions. 
BMC Software Belgium N.V. v. Marchand, 83 S.W.3d 789, 794
(Tex. 2002).  We uphold conclusions of
law on appeal if the judgment can be sustained on any legal theory the evidence
supports.  Id.

            When a party
challenges the legal sufficiency of the evidence to support an adverse finding
on which it had the burden of proof, the party must show that the evidence
establishes as a matter of law all vital facts in support of the issue.  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  We credit
evidence that supports the judgment if reasonable jurors could and disregard
contrary evidence unless reasonable jurors could not.  City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  Anything
more than a scintilla of evidence is legally sufficient to support the
finding.  Minn. Mining & Mfg.,
Co. v. Nishika Ltd., 953 S.W.2d 733, 738 (Tex. 1997).  More than a scintilla of evidence exists when
the evidence supporting the finding, as a whole, “rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.”  Merrell Dow Pharms., Inc. v. Havner,
953 S.W2d 706, 711 (Tex. 1997).  

            When
attacking the factual sufficiency of the evidence supporting an adverse finding
on which it bore the burden of proof, the party must show that the finding is
so contrary to the great weight and preponderance of the evidence that it is
clearly wrong and manifestly unjust.  In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
Further, in a bench trial, the trial court is the sole judge of the
credibility of the witnesses and, taking into consideration all the surrounding
circumstances in connection with the testimony, may accept or reject all or any
part of that testimony.  Nelson v.
Najm, 127 S.W.3d 170, 174 (Tex. App.–Houston [1st Dist.] 2003, pet.
denied).

Application

            First, we
address Sandra’s contention that the trial court apparently based its valuation
solely on the offer of $110,000.00 plus assumption of the debt on the double
wide mobile home.  She argues that it was
an unaccepted offer and no evidence of value. 
Even if we assume that the trial court based its valuation on the offer,
we disagree that would be error.

            The market
value of a property is the price that would be accepted “by one who desires to
sell, but is not obliged to sell,” and would be paid “by one who desires to
buy, but is under no necessity of buying.” 
City of Harlingen v. Estate of Sharboneau, 48 S.W.3d 177,
182 (Tex. 2001).  Sandra correctly argues
that unaccepted offers to purchase property are no evidence of market value of
the property.  Lee v. Lee,
47 S.W.3d 767, 785 (Tex. App.–Houston [14th Dist.] 2001, pet. denied).  With an unaccepted offer, one that has been
rejected and is no longer pending, the evidence is uncertain, speculative, and
the good faith of the person making the offer is not established.  Id.  The concerns regarding uncertainty,
speculation, and good faith do not apply with a valid, pending offer to
purchase the property.  See City of
Harlingen, 48 S.W.3d at 182 (“If the goal of an appraisal is to
ascertain market value, then logically there can be no better guide than the
prices that willing buyers and sellers actually negotiate in the relevant
market.”).

            Here, the
offer to purchase the property for $110,000.00 and assume the note on the
double wide mobile home was pending and had not been formally accepted.  But it had never been rejected.  In fact, the evidence presented to the trial
court was that the offer could still be accepted and would have been accepted
previously but for the injunction obtained by Sandra.  Therefore, if the trial court used the offer
as a starting point for valuation of the property, it would not be error.  However, that does not resolve the question
of the sufficiency of the evidence to support the judgment.

            The record
contains a “Broker’s Opinion of Value” dated February 20, 2004, prepared by Dan
Davis, indicating that the fair market value of the double wide mobile home and
its attached porch was $11,100.00. 
However, Davis reported that two storage buildings, the dog kennels, the
gated entry, the stock tank, the utilities, and the driveway add an additional
$5,500.00 in value.  He did not address
the value of the other structures on the property.  In June 2005, another broker, Steve Grant,
determined that the fair market value of the land was $70,000.00 while the
value of the single wide mobile home, one barn, one storage building, and the
dog pens together was $16,000.00.  Grant
specifically stated that he did not consider the double wide because it
belonged to the estate.  There are a
number of structures he did not mention at all. 


            The Anderson
County appraisal records for November 2005 show the land valued at
$56,240.00.  The county appraisal listed
improvements including two mobile homes, three portable buildings, two barns,
and a shed totaling $52,010.00 in value. 
Further, there was evidence that the dog pens cost $5,500.00 to
construct but were valued at $1,000.00 by Grant.  John testified that he spent $3,000.00
constructing the front entrance.  Grant
valued the single wide mobile home and its porch at $10,000.00 while the county
appraisal assigned those two items a value of $9,460.00.  The county appraisal listed three portable
buildings valued at $630.00, $420.00, and $250.00.  The county appraisal valued the two barns at
$1,640.00 and $8,100.00.  Grant valued
one of the barns at $3,500.00 without mentioning the other.  He also valued one of the portable buildings
at $1,500.00.  Finally, the county
appraisal also lists a shed valued at $230.00.

            There is no
question that the double wide mobile home belonged solely to James at the time
of his death.  Title to the single wide
mobile home is in James’s name although it was paid for with Kappus Farms
partnership money, suggesting it was a gift from the partnership to James.  The two barns were also paid for with
partnership money.  The dog pens were
built and paid for by Sandra and James during their marriage and belonged to
James at the time of his death. 
Testimony revealed that Sandra removed two portable buildings, claiming
she paid James for them before he died. 
Testimony does not reveal which of the three portable buildings remained
on the property.  There are various other
structures on the property such as a stone well, a floating dock, a chicken
coop, a deer feeder, a deer blind, and a skeet tower, none of which were given
an individual value, but all or most of which appear to have been paid for by
John.  John found a buyer willing to pay $110,000.00
for the land and all improvements and who would assume the approximately
$7,000.00 debt on the double wide mobile home. 


            The judgment
and its supporting findings of fact and conclusions of law refer to the
percentage of ownership in the land and improvements by the estate and John.  The trial court did not prepare findings of
fact identifying ownership of any item or specifically related to the value of
improvements made by James or John. 
Instead, the trial court simply found that the estate owned 58.59% of
the Anderson County property and improvements and John owned the remaining
41.41%.  The evidence, however, was not
presented in the same fashion. The record is clear that James’s estate and John
each own an undivided one-half interest in the land.  What is less clear is the division of
ownership of the improvements on the land.  


            While the
record includes various numbers from which to choose, we do not know what
values the trial court attributed to any given piece of property.  Likewise, although the record includes some
evidence of ownership of the various improvements, we do not know which of
those structures the trial court included in the 58.59% of the whole that it
found belonged to the estate.  Neither do
we know which of those structures the trial court included in the 41.41% of the
whole that it found belonged to John. 
While we have a complete record, we simply do not have findings of fact
on all controlling issues supporting the judgment.  See Taylor v. Texas Dep’t of Pub.
Safety, 754 S.W.2d 464, 468 (Tex. App.–Fort Worth 1988, writ denied)
(op. on reh’g). 

            In a case
tried before the court without a jury, in which there are findings of fact and
conclusions of law, the reviewing court will indulge every reasonable
presumption in favor of the findings and judgment of the trial court, and no
presumption will be indulged against the validity of the judgment.  Vickery v. Comm’n for Lawyer Discipline,
5 S.W.3d 241, 252 (Tex. App.–Houston [14th Dist.] 1999, pet. denied).  Where the record is silent or ambiguous, the
presumption of validity will supply by implication every proof, element,
factual finding, or proper application of the law needed to support the
judgment.  Id. at 251.  When the reviewing court has the benefit of a
detailed record, sufficiency of the evidence is no longer presumed.  Id.  However, the presumption of validity still
operates to resolve all other ambiguities in favor of the judgment.  Id.  The presumption of validity is prima facie
and may be rebutted.  Id.
at 252.  The appellant has the burden of
demonstrating error.  Id.  To limit the scope of the presumption, the
appellant should establish what facts were found by the trial court.  Id.  Although Sandra, on behalf of the children,
had the right under Rule 298 of
the Texas Rules of Civil Procedure to request additional findings of fact, she
did not do so.  See Tex. R. Civ. P. 298.  Further, the record does not reflect that
Sandra objected to the trial court’s failure to make specific fact findings on
value and ownership.  We are entitled,
under these circumstances, to imply findings that support the judgment if they
are supported by evidence.  Tex. R. Civ. P. 299; Burnside Air
Conditioning & Heating, Inc. v. T.S. Young Corp., 113 S.W.3d 889,
893 (Tex. App.–Dallas 2003, no pet.). 

            The trial
court heard evidence indicating which property belonged to James at the time of
his death, which property belonged to John, and which property was jointly
owned.  The trial court also had before
it evidence of values of the land and major structures on the land.  We conclude there is more than a scintilla of
evidence that the estate owns 58.59% of the land and improvements.  See Havner, 953 S.W.2d at
711.  Therefore, Sandra’s legal
sufficiency challenge fails.

            Generally
the trial court, when acting as fact finder, decides whether and to what extent
it accepts the testimony of an individual. 
See Nelson, 127 S.W.3d at 174.  We defer to the trial court’s
determination.  See Burnside,
113 S.W.3d at 893.  Based on the
evidence, the trial court could have allotted property to the estate and John
in a manner to support the specific percentages it found and those allotments
can be presumed in accordance with Rule 299. 
Accordingly, the trial court’s finding that the estate owns 58.59% of
the land and improvements is not so contrary to the great weight and
preponderance of the evidence that it is clearly wrong and manifestly
unjust.  See In re C.H., 89
S.W.3d at 25.  Sandra’s first issue is
overruled.

 

Removal as
Executor

            In her second
issue, Sandra contends the trial court erred in failing to remove John as
independent executor of the estate.  She
asserts that, because John has an ownership interest in the property, his
interests conflict with those of the beneficiaries.  She argues that he cannot adequately
represent the estate while seeking to retain his own share of the estate.

            Independent
administration of estates and the testator’s right to select an independent
executor of his choice are foundations of Texas law.  In re Estate of Roots, 596
S.W.2d 240, 243 (Tex. Civ. App.–Amarillo 1980, no writ).  However, removal of an independent executor
is possible for certain reasons enumerated in Section 149C of the probate
code.  See Tex. Prob. Code Ann. § 149C (Vernon Supp. 2007).  As alleged here, a trial court may remove the
independent executor when he is proved to have been guilty of gross misconduct
or gross mismanagement in the performance of his duties.  Id. § 149C(5).  The party seeking removal has the burden to
establish a violation of Section 149C.  Sammons
v. Elder, 940 S.W.2d 276, 283 (Tex. App.–Waco 1997, writ denied).

            John’s
shared ownership of the Anderson County property and improvements creates a
conflict of interest.  The estate seeks
at least an additional 4.86% interest in the property and John is adverse to
the estate’s position.  John and the
estate are both asserting ownership over the same property.   Under these circumstances, the trial court
had no alternative but to remove John as independent executor.  See Street v. Skipper, 887
S.W.2d 78, 83 (Tex. App.–Fort Worth 1994, writ denied) (independent executor
removed when she had claim adverse to estate); Formby v. Bradley,
695 S.W.2d 782, 785 (Tex. App.–Tyler 1985, writ ref’d n.r.e.) (same).  Because a conflict exists between the estate
and John as to ownership of some of the property, John cannot serve as
independent executor.  We sustain
Sandra’s second issue.

 

Removal as
Trustee

            In her
fourth issue, Sandra asserts that the trial court erred in finding that the trust
never came into existence.  She argues
that the trust was created and owned property at the death of James
Kappus.  Because of his breach of
fiduciary duty due to the conflict of interest, the argument continues, John
should be removed as trustee of the testamentary trust established by James’s
will.

            Sandra filed
an application to remove John as executor and trustee due to his conflict of
interest as explained above.  The trial
court found that, at the time of the hearing on that application, the testamentary
trust had not been funded.  In its
conclusions of law, the trial court determined that  the trust “is not in being and John Kappus
has never served as Trustee.”  Further,
it concluded that “John Kappus cannot be removed from a trust office he has never
held.”

            Article 3.3
of James’s will provides, “The residue of my estate shall be distributed in
accordance with the provisions of Article 4 applicable to the Common Trust
created for the benefit of my children.” 
Article 4 sets out the provisions of the Common Trust, but the will does
not specifically state or even allude to the time at which the trust is to be
funded and created.

            Under the
probate code, title to property devised in the will vests in the devisees
immediately upon the testator’s death, subject to the debts of the
testator.  Tex. Prob. Code Ann. § 37 (Vernon 2003); Johnson v.
McLaughlin, 840 S.W.2d 668, 671 (Tex. App.–Austin 1992, no writ).  The devisee may be a trust.  See Larson v. Enserch Exploration, Inc.,
644 S.W.2d 61, 63 (Tex. App.–Amarillo 1982, writ ref’d n.r.e.).  To avoid application of Section 37, the will
must indicate an unambiguous intent to override the general rule that assets
vest in the devisees under the will at the moment of death.  Johnson, 840 S.W.2d at
672.  Neither John’s brief nor our
examination of the will in its entirety revealed any intent on the part of
James to postpone vesting of the trust assets. 
See Bergin v. Bergin, 159 Tex. 83, 88, 315 S.W.2d
943, 946 (1958).  Therefore, pursuant to
Section 37 of the probate code, James’s will vested title to his residuary
estate in John as trustee at the time of James’s death.  The trial court erred when it found
otherwise. 

            A trust is
created by “a property owner’s testamentary transfer to another person as
trustee for a third person.”  Tex. Prop. Code Ann. § 112.001 (Vernon
2007).  A person named as trustee
conclusively accepts the position of trustee by signing the writing evidencing
the trust or by  signing a separate
written acceptance.  Tex. Prop. Code Ann. § 112.009(a)
(Vernon 2007).  Further, a person named
as trustee who exercises power or performs duties under the trust is presumed
to have accepted the trust unless the person acted only (1) to preserve trust
property and, within a reasonable time after acting, gave notice of rejection
of the trust to all beneficiaries or (2) to inspect or investigate trust
property for any purpose.  Id.  When the same person is named as independent
executor and as trustee of a testamentary trust, acceptance of the position of
trustee will be presumed from his or her having acted as executor.  See Gray v. McCurdy, 114 Tex.
217, 222-23, 266 S.W. 396, 398 (1924); Pepper v. Walling, 195
S.W. 892, 894-95 (Tex. Civ. App.–Amarillo 1917, writ ref’d).  Further, acceptance of a trust by a trustee
is ordinarily presumed until he disclaims. 
Lange v. Houston Bank & Trust Co., 194 S.W.2d 797, 801
(Tex. Civ. App.–Galveston 1946, writ ref’d n.r.e.).

            A trial
court may, in its discretion, remove a trustee pursuant to Texas Property Code
Section 113.082(a) if the evidence warrants removal.  See Tex.
Prop. Code Ann. § 113.082(a) (Vernon 2007).  A trial court abuses its discretion when it
acts without reference to any guiding rules and principles or when it acts
arbitrarily and unreasonably.  In
re C.R.O., 96 S.W.3d 442, 446 (Tex. App.–Amarillo 2002, pet.
denied).  The trial court’s decision will
be affirmed if it enjoys the support of law and some probative evidence.  Id. at 446-47.  Here, the trial court’s erroneous ruling
regarding the creation of the trust prevented it from reaching the crux of this
complaint.  As explained above, John
asserts ownership of a portion of property claimed by the trust.  This attempted appropriation is a violation
of a fiduciary duty, a repudiation of a trust relation to the property, and,
accordingly, a ground for removal.  Brault
v. Bigham, 493 S.W.2d 576, 579 (Tex. Civ. App.–Waco 1973, writ ref’d
n.r.e.).  Therefore, the trial court
abused its discretion when it allowed John, who had violated his fiduciary duty
to the trust, to retain his position as trustee.  The trial court erred in denying Sandra’s
application to remove John as trustee. 
We sustain Sandra’s fourth issue.

 

Conclusion

            The evidence
is both legally and factually sufficient to support the trial court’s
determination of ownership of the property. 
However, because of John’s conflict of interest, the trial court erred
in failing to remove him as executor and trustee.  Due to our disposition
of issue two, we need not reach the third issue.  See Tex.
R. App. P. 47.1. 

            The judgment
of the trial court is affirmed in part and reversed in part.  We affirm the trial court’s
disposition of the Anderson County property and improvements.  We reverse the trial court’s
denial of Sandra’s application to remove John as independent executor and as
trustee.  We render
judgment ordering that John be removed as independent executor of the estate of
James W. Kappus and as trustee of the trust created by the will of James W.
Kappus. 

 

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

Opinion delivered November
30, 2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

            

 

 

 

(PUBLISH)