**REDDY ICE CORPORATION,**
Appellant

v.

**TRAVELERS LLOYDS INSURANCE COMPANY and Gulf Insurance Company, Appellees.**

No. 14–03–00963–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 24, 2004.

50. *See id.*

Anthony G. Stergio and Tim McDaniel, Houston, for appellants.

James W. Walker, Dallas, Keith R. Taunton, Susan C. Stevenson, Houston, Katherine Anne Moore, Dallas, Solace Kirkland Southwick, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE BROCK YATES, Justice.

This appeal concerns an insurance coverage dispute. At issue is whether Texas or Louisiana law applies to a pollution exclusion clause contained in an insurance policy issued to appellant Reddy Ice Corporation by appellee Travelers Lloyds Insurance Company ("Travelers"). Travelers filed this action, seeking a declaration that, in connection with certain lawsuits filed against Reddy Ice, Travelers owed no duty to defend or indemnify Reddy Ice under the primary general liability insurance policy. Appellee Gulf Insurance Company intervened, seeking a declaration that it owed no similar duty under the companion excess policy it issued to Reddy Ice. The trial court granted appellees' motions for summary judgment, finding that, because Texas law governs the insurance contracts, no coverage is afforded under the policies. We affirm.

### BACKGROUND

Several individuals sued Reddy Ice in Louisiana for personal injuries caused when a refrigeration unit at its Baton Rouge facility allegedly malfunctioned and leaked a significant amount of ammonia into the atmosphere. At the time of the alleged leak, Reddy Ice was insured under a general commercial liability insurance policy issued by Travelers, a commercial excess liability (umbrella) insurance policy issued by Gulf, and a pollution legal liability select insurance policy issued by American International Specialty Lines Insurance Company.[1]

The Travelers policy contains a pollution exclusion clause, which provides in pertinent part as follows:

This insurance does not apply to:

. . .

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

. . .

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials

---

1. Packaged Ice, Incorporated is the first-named insured in the Travelers policy. Reddy Ice is identified, however, as an additional-named insured under the policy. Reddy Ice is not specifically identified in the Gulf policy but is an insured under a provision that provides coverage to "any other person or organization insured under any policy of the 'underlying insurance.'"

to be recycled, reconditioned or reclaimed.

The Gulf excess policy is subject to the pollution exclusion clause contained in the Travelers policy. The policies do not contain an express choice-of-law provision. The parties agree that, if Texas law is used to interpret the pollution exclusion clause, Travelers and Gulf have no duty to defend or indemnify Reddy Ice in the Louisiana lawsuits.[2] But, if the substantive law of Louisiana is used to interpret the clause, a fact issue exists as to whether the clause will exclude coverage for the personal injury claims.[3] Thus, we are presented with a true conflict of law.

## STANDARD OF REVIEW

A summary judgment movant must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Havlen v. McDougall,* 22 S.W.3d 343, 345 (Tex.2000). We review the summary-judgment evidence using familiar standards of review. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). When a trial court's order granting summary judgment does not specify the grounds for the ruling, we must affirm summary judgment if any of the summary-judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). The determination of which state's law applies is a question of law for the court to decide. *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000). Therefore, we must review the trial court's decision to apply Texas law in this case de novo. *See Minn. Mining & Mfg. Co. v. Nishika Ltd.,* 955 S.W.2d 853, 856 (Tex.1996).

## ANALYSIS

In its sole issue, Reddy Ice argues the choice-of-law principles adopted by Texas dictate that Louisiana law should be applied to the pollution exclusion clause in the Travelers policy. In Texas, when, as here, a contract does not contain an express choice-of-law provision, a court must determine whether a relevant statute directs the court to apply the laws of a particular state. Absent a statutory directive, a court must then ascertain which state has the most significant relationship to the issue presented for determination. *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991); RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §§ 6, 8 (1971). Reddy Ice contends that no statutory directive applies to the Travelers policy and that the most significant relationship test points to the application of Louisiana law. Travelers and Gulf argue, however, that article 21.42 of the Insurance Code requires the application of Texas law to this dispute.

## Article 21.42

Article 21.42 provides that

[a]ny contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered

---

2. The Texas Supreme Court has determined that a pollution exclusion clause, like the one here, is unambiguous and bars coverage for claims similar to the claims asserted in the Louisiana lawsuits. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 521–22 (Tex.1995).

3. The Louisiana Supreme Court has held that a total pollution exclusion clause is ambiguous and therefore presents an issue of fact regarding its applicability to a given occurrence. *See Doerr v. Mobil Oil Corp.,* 774 So.2d 119, 135–36 (La.2000).

into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy of contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS.CODE ANN. art. 21.42 (Vernon 1981). The provision applies to an insurance contract when: (1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas. *Hefner v. Republic Indem. Co. of Am.*, 773 F.Supp. 11, 13 (S.D.Tex.1991); *see also Am. Home Assur. Co. v. Safway Steel Prods. Co.*, 743 S.W.2d 693, 697 (Tex.App.-Austin 1987, writ denied). Article 21.42 is to be interpreted narrowly to avoid giving "extraterritorial effect" to its terms. *See Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389, 399, 45 S.Ct. 129, 69 L.Ed. 342 (1924); *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex.1968).

■ The parties do not dispute that Travelers and Gulf were doing business in

Texas when they issued the relevant policies and that the policies were issued in the course of their business in Texas. However, Reddy Ice is a Nevada corporation with its principal place of business in Texas.[4] Reddy Ice acknowledges its principal place of business may establish it is a resident of Texas but contends its principal place of business does not establish it is an inhabitant[5] of Texas for purposes of article 21.42. To resolve this issue, we must determine whether, under the statute, a corporation's principal place of business can be considered the place where it inhabits. No Texas state court has addressed this precise issue in construing the language of article 21.42.[6]

■ When interpreting a statute, we try to give effect to legislative intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). We look first to the plain and common meaning of the statute's words. *See id.* If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See id.* Further, if a statute is unambiguous, we must not use rules of construction or other extrinsic aids to create ambiguity. *See id.* at 865–66.

---

4. We disagree with the insurers' contention that, because Packaged Ice is a Texas corporation, article 21.42 applies. *See Austin Bldg.*, 432 S.W.2d at 701 (finding that the relevant inquiry is not whether one of the insureds is an inhabitant of Texas but whether the insured involved in the dispute is an inhabitant of Texas).

5. Travelers and Gulf do not argue Reddy Ice is a citizen of Texas. Rather, they contend Reddy Ice is an inhabitant of Texas.

6. Although one federal district court in Texas has applied article 21.42 to a dispute between an insurance company doing business in Texas and an insured foreign corporation with a principal place of business in Texas, it did so

without defining the term "inhabitant." *See SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F.Supp. 674, 678 (N.D.Tex.1996) ("The parties agree that the claims are governed by Texas law .... SnyderGeneral has its principal place of business in Texas. U.S. Fire is an insurance company doing business in the state. The policy was issued and delivered in Texas. Therefore, [article 21.42] requires the application of Texas law."). However, another federal district court refused to apply article 21.42 to a dispute involving a Mississippi corporation because "Texas case law defines a corporation as an 'inhabitant' of the state where it is incorporated." *TV–3, Inc. v. Royal Ins. Co. of Am.*, 28 F.Supp.2d 407, 417 (E.D.Tex.1998).

■ It is a well-established general principle that a corporation is an inhabitant only of the state where it is incorporated, although it may be authorized to conduct its business in other states and may in fact reside in more than one place. *Suttle v. Reich Bros. Constr.*, 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614 (1948) (noting that a corporation's habitat "can only be in the state by which it was created, although it may do business in other states whose laws permit it"); *Pittsburg Water Heater Co. of Tex. v. Sullivan,* 115 Tex. 417, 423, 282 S.W. 576, 579 (1926) ("It is very generally held that a corporation is an inhabitant of the state under whose law it is incorporated, and that it has a residence wherever it conducts its ordinary business."); 8 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4025 (perm.ed., rev.vol.2001) [hereinafter FLETCHER CYCLOPEDIA] ("The words inhabitant, resident and citizen have been interpreted as contemplating the same condition, that of domicile. The legal existence, the home, the domicile, the habitat, the residence, and the citizenship of the corporation can only be in the state by which it was created, notwithstanding it may lawfully do business in other states."); BLACK'S LAW DICTIONARY 703 (5th ed. 1979) ("A corporation can be an inhabitant only in the state of its incorporation.").[7]

An exception to this general principle is recognized when a state's law requires a foreign corporation to become domesticated in order to transact business in the state. *See* 8 FLETCHER CYCLOPEDIA § 4025 (explaining that a corporation is a foreign corporation to all states other than the state of its incorporation unless it is domesticated under the laws of a particular state). The inhabitancy of a corporation has been extended to include its principal place of business, usually by statute, in certain jurisdiction and venue rules because of the policies regarding diversity of citizenship and forum availability. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170, 173, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (explaining how venue statutes expanded to include corporations doing business in a state); 9 FLETCHER CYCLOPEDIA § 4310; *see also Nat'l Truckers,* 480 S.W.2d at 457–58.

In this case, Travelers and Gulf cite cases and commentary regarding the interpretation of older Texas venue provisions to contend that the terms "inhabitant" and "resident" are synonymous and that, because Reddy Ice is admittedly a resident of Texas, it is also an inhabitant of Texas under article 21.42. The venue provisions at issue in those cases provided that no person who was an inhabitant of the state could be sued out of the county in which he had his domicile.[8] *Pittsburg Water,* 115

---

**7.** *See also, e.g., In re Auto. Refinishing Paint Antitrust Litig.,* 358 F.3d 288, 296 n. 6 (3d Cir.2004) ("Being an 'inhabitant' is held to mean incorporated under the laws of that jurisdiction .... Being 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'"); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 952–53 (1st Cir.1984) ("Under the general provision allowing suit against a defendant in the district in which 'he is an inhabitant,' a corporation could be sued only in the state in which it was incorporated even though it was

engaged in business in another state."); *Barber–Greene Co. v. Blaw–Knox Co.,* 239 F.2d 774, 777 (6th Cir.1957) ("It had long been settled ... a corporation was an inhabitant only of the state of incorporation.").

**8.** The venue provision in 1895 contained the term "inhabitant," and the term remained in the venue provisions until a later version of the statute was repealed in 1985. Act of June 16, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3322. The current venue rules do not use the term "inhabitant." *See* TEX CIV. PRAC. & REM.CODE ANN. § 15.002(a) (Vernon

Tex. at 420–21, 282 S.W. at 578; *Taylor v. Wilson,* 99 Tex. 651, 651, 93 S.W. 109, 109 (1906); *Pearson v. West,* 97 Tex. 238, 242, 77 S.W. 944, 945 (1904). The statute had numerous exceptions, one of which provided that when a defendant did not reside in Texas, the suit could be brought in the county in which the plaintiff resided. *Taylor,* 99 Tex. at 653, 93 S.W. at 110.

Travelers and Gulf rely on *Taylor v. Wilson,* in which the defendant objected to being sued in the plaintiff's county of residence. *Id.* at 652, 93 S.W. 109. The defendant was a citizen of New York and maintained a residence in New York. *Id.* He did, however, also reside in Jefferson County, Texas, and had been operating a business in Jefferson County for the fourteen months prior to the filing of the lawsuit. *Id.* The lower court found, because the defendant was not an inhabitant of Texas, he could not claim the benefit of being sued in the county of his residence. *Id.* at 653, 93 S.W. 109. The supreme court stated the purpose of the venue statute was "to require that when residents of this state, whether citizens or not, are to be sued in its courts, they shall be entitled to be sued in the counties where they reside." *Id.* The court essentially reasoned that a narrow interpretation of the term "inhabitant" would be inconsistent with the purpose of the venue statute. *Id.* The court then found that, for purposes of the venue statute, the terms "inhabitant" and "resident" must have the same mean-

ing.[9] *Id.* We find the broad interpretation of those terms—defined as synonymous to effectuate the intent of the legislature in enacting the statute—does not control the resolution of the issue now before us.

Here, no exception applies to the generally-accepted principle that a corporation is an inhabitant only of its state of incorporation. Article 21.42 is not a jurisdiction or venue statute, and Texas does not require that a corporation become domesticated in order to conduct business in the state. *See* Tex. Bus. Corp. Act Ann. art. 8.01 (Vernon 2003). In sum, nothing in the statute indicates that the term "inhabitant" should be defined by the exception rather than the rule. Further, the United States and Texas supreme courts have cautioned that article 21.42 should be interpreted narrowly to avoid giving the statute an extraterritorial effect. *Dunken,* 266 U.S. at 399, 45 S.Ct. 129 ("[The predecessor to article 21.42] was incapable of being constitutionally applied to [the contract at issue] since the effect of such application would be to regulate business outside the state of Texas and control contracts made by citizens of other states in disregard of their laws ...."); *Austin Bldg.,* 432 S.W.2d at 701 ("[Article 21.42] cannot be given extraterritorial effect.").

Although it has a principal place of business in Texas, Reddy Ice is a foreign corporation to Texas. As a foreign corporation operating in Texas, Reddy Ice is

2002) (providing that a lawsuit may be filed "in the defendant's principal office in this state, if the defendant is not a natural person").

**9.** *See also Pittsburg Water,* 115 Tex. at 421, 282 S.W. at 578 ("In construing aforesaid [*venue*] statutes, which have been the law in this state for more than half a century, our Supreme Court has held that 'resident' and 'inhabitant' convey the same meaning."); *Pearson,* 97 Tex. 238, 77 S.W. at 945 (1904)

("The general rule for determining the *venue* of suits in this state is prescribed by ... article ... 1194 .... The statute also uses 'inhabitant.' An inhabitant and resident mean the same thing." (emphasis added)); McDonald & Carlson, Texas Civil Practice § 6:5 (2d ed.1991) ("Historically, any person 'who is an inhabitant', as the phrase formerly appeared in the basic *venue* rule, could be sued in the county of residency. 'Inhabitant' was construed broadly ...." (emphasis added)).

subject to general jurisdiction in the state, but we are hesitant to find that Texas law should govern automatically any contract it enters with an insurer doing business in Texas absent an express legislative directive in the statute. *See TV–3*, 28 F.Supp.2d at 417 (explaining that applying article 21.42 to a foreign corporation doing business in Texas would be "exactly the sort of 'extraterritorial effect' proscribed by *Austin Building Company* "). Accordingly, we adopt the interpretation supported by the plain meaning of the statute and hold the unambiguous language of article 21.42 restricts a corporation's inhabitancy to its place of incorporation. Because Reddy Ice is incorporated in Nevada, it cannot be considered an inhabitant of Texas for purposes of article 21.42.

### Most Significant Relationship

■ As no statutory directive governs the dispute, we must determine which state has the most significant relationship to the issue presented for determination. Section 6 of the Restatement (Second) Conflicts of Law provides the following general considerations to inform a choice-of-law determination: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. The relevant factors specific to contract disputes include: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735–36 (Tex.1997); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2).

Reddy Ice argues Texas courts have clearly established that the place of performance is of paramount importance in service contract cases.[10] Although this is a correct statement of law, it is important to note that the contract at issue here is an insurance contract, not a service contract. This is a crucial difference because insurance contracts implicate industry-specific considerations, which have been addressed

---

**10.** Reddy Ice relies primarily on *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163 (Tex.App.-Houston [14th Dist.] 2002, no pet.), for this proposition. In *Chesapeake,* this court found Texas law applied to an indemnity provision contained in a service contract between an oil-well operator and drilling contractor. *Id.* at 180. The contract at issue contained a mutual indemnity provision that had been interpreted differently under Texas and Louisiana law. *Id.* at 169. We noted it is more appropriate to consider the disputed contractual issue separately from the contract as a whole, and because the dispute concerned the indemnity clause, we determined that the place of performance should be tied to the indemnity obligation. *Id.* Thus,

we evaluated which state had the most significant relationship to the disputed issue, using the place of the performance of the indemnity obligation as a prime factor because the supreme court has elevated that factor in service contracts. *Id.* at 171–79. We found Texas law should be applied as the lawsuits had been filed in Texas and the indemnification would be made to or from Texas. *Id.* at 179–80. Here, we are not tasked with determining which state has the most significant relationship to the indemnity clause. Rather, we are determining which state has the most significant relationship to the issue of excluding pollution-related incidents from coverage under general commercial liability policies.

in Texas case law and the Restatement (Second) of Conflicts.

 Notably, courts applying Texas law to determine whether a party has a duty to defend or indemnify have found "when the issues of a case require the construction and application of insurance policies, ... the relevant inquiry is what contacts the state has with the insurance dispute, and not with the underlying lawsuit." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir.1996). Moreover, courts applying Texas law have adopted the reasoning of comment (a) to section 193 of the Restatement (Second) of Conflicts to hold that the location of the insured risk and the location of the subject matter of the contract are neither significant nor determinative in deciding which law to apply to multi-risk insurance contracts. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. a ("The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done ... include ... where the policy covers a group of risks that are scattered throughout two or more states."); *see also*

*Houston Cas. Co. v. Certain Underwriters at Lloyd's London,* 51 F.Supp.2d 789, 797 (S.D.Tex.1999) ("HCC's obligation under the parties' agreement was to pay a premium; the Underwriters' obligation was to indemnify certain losses. *Where* the losses occurred did not affect either obligation. When the contract is one of payment, the place of performance seems, in truth, of no particular consequence.").

Reddy Ice contends that we should also adopt comment (f) to the same section of the Restatement, which suggests that, at least with respect to most policy issues, the court should treat multi-risk policies as separate policies, each insuring an individual risk. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. f.[11] However, other Texas courts have declined to do so because giving such weight to the location of the insured risk would potentially subject an insurer, through one contract, to the laws of numerous states on issues that are more appropriately determined by the state's law that promulgated the policy form at issue. *See, e.g., Houston Cas.,* 51 F.Supp.2d at 797–98 (" 'If [the insured] were held to have a significant relationship with each state in which the insured properties are located, he would potentially be

---

11. Comment (f) to section 193 of the Restatement (Second) of Conflicts provides:

> *Multiple risk policies.* A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y, and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, *at least with respect to most issues,* as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by

fire, it is thought that the court would determine the rights and obligations of the parties under the policy, *at least with respect to most issues,* in accordance to the local law of X. In any event, *that part of the policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state.*

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. f (emphasis added). Although the Travelers policy contains statewide forms, the trial court was not interpreting language contained on one of the statewide forms. Rather, it was interpreting the pollution exclusion clause contained on the commercial general liability form.

subject to twenty different state laws. By analogy, the owner of a fleet of ships would potentially be liable throughout every port city in the United States.'" (quoting *Hefner v. Republic Indem. Co. of Am.,* 773 F.Supp. 11, 13 (S.D.Tex.1991)).

 Because the policies at issue here provide nationwide liability coverage, the place of contracting, the place of negotiation, and the domicile, residence, nationality, place of incorporation, and place of business of the parties become the primary factors to determine which law applies. Applying these factors to the present case, we find that the application of Texas law to the insurance contract was proper. Travelers is a Texas corporation with its principal place of business in Texas. Gulf is a Connecticut corporation with its principal place of business in New York. The contracts were negotiated in Texas. The Travelers policy was issued from Travelers's Texas office through a Texas broker to the first-named insured, Packaged Ice, at its principal place of business in Houston, Texas. The Gulf policy was issued to Packaged Ice in Texas in the course of Gulf's Texas business. The premiums were to be paid in Texas by the first-named·insured, a Texas corporation. Notices of cancellation and of occurrences triggering potential coverage were to be submitted in Texas. Texas was, by all accounts, the center of the relationship between the insurers and Reddy Ice. Texas has a strong interest in the outcome of an insurance coverage dispute that involves a Texas insurer, an insurer doing business in Texas, and their contractual relationship with their insured, a company principally operating in Texas. Louisiana has little interest in whether any settlements or judgments are paid by Reddy Ice, or instead, by its insurers, or in regulating the scope of a pollution exclusion clause contained in an insurance policy issued in Texas. *See Harrison v. R.R. Morrison & Son, Inc.,* 862 So.2d 1065, 1069–71 (La.Ct.App.2003) (applying Mississippi law to pollution exclusion clause although lawsuit was filed in Louisiana because Mississippi had a greater interest in regulating an insurance policy issued in Mississippi).

We overrule Reddy Ice's only issue, and affirm the trial court's judgment.