**Opinion issued August 28, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00091-CV

———————————

**TESCO CORPORATION (US), Appellant**

**V.**

**STEADFAST INSURANCE COMPANY, Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-36774**

---

## O P I N I O N

Appellant, Tesco Corporation (US) ("Tesco"), challenges the trial court's

rendition of summary judgment in favor of appellee, Steadfast Insurance Company

("Steadfast"), in Tesco's declaratory-judgment action[1] against Steadfast. In three issues, Tesco contends that the trial court erred in denying it summary judgment and granting Steadfast summary judgment.

We reverse and remand.

## Background

In the underlying lawsuit,[2] Von Phathong[3] sued Tesco in a United States District Court in Colorado for negligence after he sustained personal injuries while working on a Tesco drilling rig in Rifle, Colorado. Tesco was insured under general commercial liability and commercial umbrella (excess) liability policies (collectively, the "Policies") issued by Steadfast, and Steadfast provided Tesco with a defense in the underlying lawsuit. After a jury awarded Phathong $1,500,000 in punitive damages against Tesco, Steadfast notified Tesco by letter that the Policies did not afford coverage for the punitive damages award because Colorado law "does not allow," as a matter of public policy, "punitive damages to be afforded coverage under a policy of insurance."

Subsequently, Tesco filed the instant lawsuit, seeking a judgment declaring that Texas law governs the scope of the Policies and Steadfast is "obligated"

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.001–.011 (Vernon 2008 & Supp. 2013).

[2]     Styled *Phathong v. Tesco Corp. (US)*, No. 10-CV-00780-WJM-MJW, 2012 WL 5187751, at *1 (D. Colo. Oct. 19, 2012).

[3]     Phathong is not a party to this appeal.

2

thereunder "to pay for any punitive damages awarded against [Tesco]" in the underlying lawsuit. Steadfast filed an answer, generally denying Tesco's allegations.

Tesco then filed a motion for partial summary judgment, asserting the following:

[1.] Texas law applies to the construction of the Policies and to the issue of whether punitive damages are covered by the Policies;

[2.] Under Texas law, punitive damages are covered by liability policies unless otherwise excluded;

[3.] Steadfast waived its right to assert non-coverage of the punitive damages by failing to issue a reservation of rights on that point until after the Phathong verdict was entered; and

[4.] Steadfast is estopped from asserting that the punitive damages are not covered since Steadfast failed to issue any reservation of rights letter on that point until after the Phathong verdict was entered.

Tesco attached to its summary-judgment motion copies of the Policies; its original petition in the instant suit; Steadfast's letters regarding denial of coverage; and, from the underlying lawsuit, copies of Phathong's petition, a pretrial order, the jury verdict, and the final judgment.

In its cross-motion for summary judgment and response to Tesco's motion, Steadfast argued that it is entitled to judgment as a matter of law because Colorado law applies and prohibits insurance coverage for punitive damages in this case. It further argues that waiver and estoppel "do not apply" because "Steadfast cannot waive or be estopped from the application of Colorado public policy." Steadfast

3

directed the trial court to evidence that Tesco had previously filed with its summary-judgment motion. In its response to Steadfast's cross-motion for summary judgment, Tesco asked the trial court to take judicial notice of its original summary-judgment motion and evidence.

After a hearing, the trial court granted Steadfast's cross-motion for summary judgment and denied Tesco's motion for partial summary judgment. It entered a judgment, declaring that "Colorado law applies in this case and that no coverage is available for the punitive damage award assessed against [Tesco]." And it ordered that Tesco "take nothing on its claims against [Steadfast] and that all [Tesco's] claims against [Steadfast] are hereby dismissed."

**Standard of Review**

Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *Bowers v. Taylor*, 263 S.W.3d 260, 264 (Tex. App.—Houston [1st Dist.] 2007, no pet.). To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its own claim, it must conclusively prove all essential elements of its cause of action. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When a defendant moves for

4

summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment proof presented by both sides and determine all questions presented. *See Centerpoint Energy Hous. Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

## Conflict of Laws

In its first issue, Tesco argues that the trial court erred in granting Steadfast summary judgment because Texas law, and not Colorado law, "applie[s] to the question of coverage under a liability policy issued in Texas to an insured having its principal place of business in Texas."

5

A determination of which state's law applies in a case is a question of law. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 440 (Tex. 2007). Accordingly, we review de novo the trial court's decision to apply Colorado law in this case. *See Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996).

When, as here, an insurance contract does not contain an express choice-of-law provision, we consider whether a relevant statute directs us to apply the laws of a particular state. *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 340 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *see Daccach*, 217 S.W.3d at 443. Texas law governs an insurance contract "when (1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas." TEX. INS. CODE ANN. art. 21.42 (Vernon 2009); *Reddy Ice Corp.*, 145 S.W.3d at 341. Here, however, the parties do not dispute that article 21.42 does not apply because Tesco, as a Delaware corporation, is not a "citizen or inhabitant" of Texas for purposes of this provision, despite its primary place of business being located in Texas. *See Reddy Ice Corp.*, 145 S.W.3d at 341–42, 344 (holding "unambiguous language of article 21.42 restricts a corporation's inhabitancy to its place of incorporation," notwithstanding its

6

principal place of business being in Texas, and terms "inhabitant" and "citizen" contemplate same condition).

When, as here, no statutory directive governs the dispute, the law of the state with the "most significant relationship" to the particular substantive issue is applied. *See id.* at 344; *see also Daccach*, 217 S.W.3d at 443. The relevant contacts are those the state has with the insurance dispute, and not with the underlying lawsuit. *Reddy Ice Corp.*, 145 S.W.3d at 345; *see also Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 232–33 (5th Cir. 2005).

Generally, a court resolves choice-of-law questions by considering, under Restatement (Second) Conflict of Laws section 6: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984) (abandoning traditional lex loci rule for resolving choice-of-law questions and adopting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)).

"When evaluating choice-of-law issues in contractual disputes, we consider the facts of the case under the 'most significant relationship' test set forth in section 188 of the Restatement (Second) of Conflicts of Laws." *Minn. Mining & Mfg. Co. v. Nishika, Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997). "[W]e determine contractual rights and duties by the law of the state with the most significant relationship to the transaction and the parties." *Id.* We consider: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* at 735–36 (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)); *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) ("Section 188 of the Restatement provides that a contract is to be governed by the law of the state that has the most significant relationship to the transaction and the parties, taking into account various contacts in light of the basic conflict of laws principles of section 6 of the Restatement.").

When an insurance policy provides coverage across multiple jurisdictions,[4] the place of contracting, place of negotiation, and the domicile, place of incorporation, and place of business of the parties become "the primary factors to

---

[4] Here, the Policies define "coverage territory" as including the United States, its territories and possessions, Puerto Rico, Canada, "[i]nternational waters or airspace," and, under certain conditions, "[a]ll parts of the world."

8

determine which law applies." *Reddy Ice Corp.*, 145 S.W.3d at 346. Here, Tesco is a Delaware corporation, with its principal place of business in Texas. And Steadfast has its principal place of business in Illinois, but does business in Texas. The insurance contracts were negotiated and executed in Texas, and the Policies were issued from Steadfast's underwriters in Texas, through a Texas broker, to Tesco. Colorado does not have any relation to the insurance contract between Tesco and Steadfast. Thus, applying the section 188 factors, we conclude that Texas law governs the scope of coverage afforded under Tesco's insurance contracts with Steadfast. *See Minn. Mining & Mfg. Co.*, 953 S.W.2d at 735; *Scottsdale Ins. Co. v. Nat. Emergency Servs., Inc.*, 175 S.W.3d 284, 293–94 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (applying Restatement section 188 factors and then section 6 factors to insurance contract analysis).

In *Reddy Ice*, several individuals sued Reddy Ice in Louisiana for personal injuries that they sustained when a refrigeration unit at a Reddy Ice facility in Baton Rouge allegedly leaked ammonia. 145 S.W.3d at 339. Reddy Ice, a Nevada corporation with its principal place of business in Texas, was insured by Travelers, a Texas corporation. *Id.* at 341, 346. The issue presented was whether Texas or Louisiana law governed a pollution exclusion clause contained in the insurance contract between Reddy Ice and Travelers. *Id.* at 339. Under Texas law, a total pollution exclusion clause is unambiguous and bars coverage for claims similar to

those at issue. *Id.* at 340 n.2. Under Louisiana law, a total pollution exclusion clause is ambiguous and presents a fact issue in each case. *Id.* 340 n.3. After applying the section 188 factors, the court held that "Texas has a strong interest in the outcome of an insurance coverage dispute that involves a Texas insurer, an insurer doing business in Texas, and their contractual relationship with their insured, a company principally operating in Texas." *Id.* at 346. The court noted that Louisiana had little interest in whether the judgment was paid by Reddy Ice or its insurer, or in regulating an insurance policy issued in Texas. *Id.*

Steadfast argues that *Reddy Ice* is distinguishable because it did not concern the question presented here "regarding the public policies of the states," which is controlled by the general Restatement section 6 factors. In support of its argument, Steadfast relies on *American Home Assurance Co. v. Safway Steel Products Co.*, 743 S.W.2d 693, 696 (Tex. App.—Austin 1987, writ denied). In *American Home*, the insurers appealed a declaratory judgment in favor of the insured regarding coverage for exemplary damages, and the court considered whether to apply the laws of Texas, New York, Wisconsin, or Missouri. 743 S.W.2d at 698. After the court concluded that Insurance Code section 21.42 required it to apply Texas law, it nevertheless went on to consider the most significant relationship tests under the Restatement. *Id.* at 697–98; *but see Daccach*, 217 S.W.3d at 443 ("[T]he factors in

10

section 6(2) of the Restatement do not come into play if there is statutory guidance that the law is intended to govern the transaction.").

The court in *American Home* concluded that the needs of the interstate system were best served by imposing the law of the state in which the underlying torts occurred that gave rise to the imposition of punitive damages. 743 S.W.2d at 699 (applying Restatement (Second) on Conflicts of Law § 6). Otherwise, it reasoned, insurers could, "after paying the primary personal injury action under the reservation of rights, seek a declaratory judgment in a state in which they were doing business and whose public policy precludes insuring against punitive damages." *Id.* Steadfast asserts that, similarly here, the more general "significant relationship" test under Restatement section 6 militates in favor of applying Colorado law because the underlying tort that gave rise to the punitive damages occurred in Colorado.

We note again, however, that the relevant contacts are those each state has with this insurance dispute, and not with the underlying lawsuit. *See Reddy Ice Corp.*, 145 S.W.3d at 345. Moreover, the more general Restatement section 6 factors weigh in favor of applying Texas law to this insurance dispute. Regarding the needs of the interstate system and the relevant policies of the forum, we recognize that the public policy of Colorado prohibits an insurance carrier from providing insurance coverage for punitive damages and Colorado has an

identifiable interest in upholding its public policies. *See Duncan*, 665 S.W.2d at 420–21; *see also Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996). However, that the underlying lawsuit arose in Colorado does not, in itself, mean that Colorado has an interest that is superior to the interests of Texas. Regarding the protection of justified expectations, Texas has a strong interest in protecting the freedom of contract, the value of certainty of enforcement, and a Texas insured's expectations in entering an insurance contract in Texas with a Texas insurer. *See Duncan*, 665 S.W.2d at 420–21; *see Reddy Ice Corp.*, 145 S.W.3d at 345 (noting that Texas has strong interest in outcome of insurance coverage dispute involving insurer doing business in Texas with company principally operating in Texas).

Applying Colorado law in this case would invalidate a portion of Tesco's contract with Steadfast, and applying Texas law would uphold it. "[W]hen the law of one state would invalidate the contract, but the law of another would uphold it, the Restatement . . . favors applying the law of the state which would uphold the validity of the contract." *Am. Home Assurance Co.*, 743 S.W.2d at 700–01.

Moreover, Steadfast has not established that, given the language of the Policies, it has any reasonable expectation that Colorado law would govern their scope. Texas courts have declined to treat multi-risk policies as separate policies, each insuring an individual risk, "because giving such weight to the location of the insured risk would potentially subject an insurer, through one contract, to the laws

12

of numerous states on issues that are more appropriately determined by the state's law that promulgated the policy." *Reddy Ice Corp.*, 145 S.W.3d at 345–46 ("By analogy, the owner of a fleet of ships would potentially be liable throughout every port city. . . .").

We conclude that Texas law governs the scope of coverage afforded under Tesco's insurance contracts with Steadfast. Accordingly, we hold that the trial court erred in concluding that Colorado law governs this dispute and granting Steadfast summary judgment. Accordingly, we sustain Tesco's first issue.

### Punitive Damages

In its second issue, Tesco argues that the trial court erred in denying it summary judgment because the punitive damages awarded against Tesco in the underlying lawsuit are covered under the Policies issued by Steadfast and are insurable under Texas law.

To determine whether punitive damages for gross negligence are insurable, we consider whether (1) the plain language of the Policies covers the punitive damages awarded in the underlying lawsuit and (2) Texas public policy allows or prohibits coverage under the circumstances of the case. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 655 (Tex. 2008).

The plain language of an insurance policy, like any other contract, must be given effect when the parties' intent may be discerned from that plain language.

*See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). If the policy language has only one reasonable interpretation, then it is not ambiguous, and we construe it as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). If the contract is susceptible to two or more reasonable interpretations, then it is ambiguous, and we must resolve the uncertainty by adopting any reasonable construction that favors the insured. *Id.* An intent to exclude coverage must be expressed in clear and unambiguous language. *Nat'l Union Fire Ins. Co. v. Hudson Energy, Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

Here, under the general commercial liability policy issued to Tesco, Steadfast agreed to pay "those sums that [Tesco] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The coverage applies to "bodily injury" caused by an "occurrence" that takes place within the "coverage territory," during the "policy period." And the umbrella (excess) liability policy issued to Tesco provides that Steadfast "will pay on behalf of [Tesco], those damages covered by this insurance in excess of the total applicable limits of the underlying insurance." Thus, the Policies obligate Steadfast to pay "those sums" and "those damages" that Tesco "becomes legally obligated to pay as damages" arising out of bodily-injury claims.

14

Generally, language in a standard form liability policy providing for coverage for "sums" or "all sums" an insured becomes liable to pay as a result of bodily injury encompasses punitive damages, if not otherwise excluded. *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 183 (Tex. App.—Fort Worth 2004, pet. denied); *Am. Home Assurance Co.*, 743 S.W.2d at 702. There is no language in the Policies making any distinction as to the types of damages covered or expressly excluding coverage for punitive damages. Steadfast could have included an express exclusion from liability for punitive damages, but it did not. *Am. Home Assurance Co.*, 743 S.W.2d at 702. Thus, we conclude that the plain language of the policies covers the punitive damages awarded against Tesco in the underlying lawsuit. *See Fairfield Ins. Co.*, 246 S.W.3d at 655.

Next, we consider whether Texas public policy prohibits the enforcement of an insurance contract covering punitive damages. *See id.* In *Fairfield*, the Texas Supreme Court concluded that "the public policy of Texas does not prohibit insurance coverage of exemplary damages[5] for gross negligence in the workers' compensation context." *Id.* at 670. Because the Texas Legislature has not demonstrated an intent to generally prohibit or allow the insurance of exemplary damages arising from gross negligence, however, the court declined to make a "broad proclamation" of public policy outside the workers' compensation context.

---

[5] The term "exemplary damages" includes punitive damages. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (Vernon 2008).

15

*Id.* Instead, it offered "some considerations applicable to the analysis in other cases." *Id.* It also noted that "[t]he majority of states that have considered whether public policy prohibits insurance coverage of exemplary damages for gross negligence . . . have decided that it does not." *Id.* at 660–61.

We note that the court, in rendering its decision in *Fairfield*, explained that Texas has a "strong public policy in favor of preserving the freedom of contract." *Id.* at 664 (citing TEX. CONST. art. I, § 16 ("No . . . law impairing the obligation of contracts[] shall be made.")). The preservation of contractual freedom and enforcement applies to the relationship between an insurer and insured. *See Fairfield Ins. Co.*, 246 S.W.3d at 655; *see also Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 341–42 (Tex. App.—Dallas 2001, pet. dism'd w.o.j.) ("Texas has a strong public policy of enforcing its insurance policies . . . ."). "Courts weighing this interest should consider the reasonable expectations of the parties and the value of certainty in enforcement of contracts generally." *Fairfield Ins. Co.*, 246 S.W.3d at 663.

Tesco explains that it is a Texas-based company conducting oil and gas services throughout the United States and maintains the Policies to cover its operations throughout the United States. The Policies obligate Steadfast to pay "those sums" and "those damages" that Tesco "becomes legally obligated to pay as damages" arising out of bodily-injury claims, and they make no distinction as to

the types of damages covered, nor do they expressly exclude coverage for punitive damages. In the absence of an express policy exclusion from liability for punitive damages, the "average insured . . . would assume that the term damages would include punitive damages, since they would become by judgment a sum that the insured would be legally obligated to pay." *Am. Home Assurance Co.*, 743 S.W.2d at 702. Further, Tesco's reasonable expectation was that, at the time Steadfast determined the premiums for the policies at issue, it "included within its underwriting process the fact that it was issuing a liability policy to a Texas company and that punitive damages are insurable under Texas law."

Moreover, the court in *Fairfield* instructed that "a court should consider the purpose" of exemplary, or punitive, damages. *See Fairfield Ins. Co.*, 246 S.W.3d at 655. In Texas, the punishment imposed through an award of exemplary damages is to be directed at the wrongdoer.[6] TEX. CIV. PRAC. & REM. CODE ANN.

---

[6] Exemplary damages can be awarded for gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (Vernon Supp. 2013). In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to:

> (1) the nature of the wrong;
>
> (2) the character of the conduct involved;
>
> (3) the degree of culpability of the wrongdoer;
>
> (4) the situation and sensibilities of the parties concerned;
>
> (5) the extent to which such conduct offends a public sense of justice and propriety; and
>
> (6) the net worth of the defendant.

*Id.* § 41.011(a) (Vernon 2008).

ch. 41 (Vernon 2008 & Supp. 2013). "Courts holding that insurance coverage for punitive damages violates public policy generally do so on the theory that wrongdoers should not be shielded from the consequences of their acts." *Westchester Fire Ins. Co.*, 152 S.W.3d at 185. If the wrongdoer is permitted to shift the burden to an insurance company, "punitive damages would serve no useful purpose." *Id.* at 186. For instance, Texas courts have "uniformly rejected as against public policy" coverage under uninsured/underinsured motorist policies when an insured seeks to recover from his own insurer punitive damages awarded to the insured against a third-party tortfeasor. *Fairfield Ins. Co.*, 246 S.W.3d at 668. The concern is that insurance coverage for punitive damages could encourage reckless conduct. *Id.* at 670.

However, "[t]he considerations may weigh differently when the insured is a corporation or business that must pay exemplary damages for the conduct of one or more of its employees." *Id.* The Austin Court of Appeals observed that while allowing exemplary-damages coverage shifts the burden of the punishment to the "innocent members of society who purchase insurance," which is contrary to the purpose of such damages, disallowing such coverage for a large corporation means that exemplary damages for the misconduct of one or a few employees will "inevitably be passed on to the consumers of its products," which is also contrary to the purpose of punitive damages. *Id.* at 669 (discussing *Am. Home Assurance*

*Co.*, 743 S.W.2d at 704).  And when punitive damages are assessed against an entire business based on the conduct of one employee, "it will often be the case that stockholders, other employees, and even management as a larger group have done little to deserve punishment." *Id.* at 689 (Hecht, J., concurring).  In cases where the corporation is "less well-established or affluent, its inability to insure against such liability may well cause a permanent financial collapse." *Am. Home Assurance Co.*, 743 S.W.2d at 704.

When the insured is a corporation, courts applying Texas law have rejected, on public policy grounds, allowing insurance coverage for punitive damages where the facts of the case demonstrate "extreme circumstances" where "avoidable conduct" by one or more employees causes injury.  *Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc.*, 529 F.3d 649, 663 (5th Cir. 2008) (considering actions of nursing home staff who allowed resident to lie for prolonged period in pool of bleach and then failed to provide medical care for chemical burns, resulting in death of resident).[7]  In *Res-Care*, however, there were "documented systemic problems of care" and a "course of conduct" by the corporation that was "so extreme that the purposes of punishment and deterrence of conscious indifference outweigh[ed] the normally strong public policy of permitting the right to contract

---

[7]    Although not binding precedent on Texas state courts, federal cases discussing Texas law may be instructive on state law issues, and Texas state courts are not prohibited from considering the reasoning of the federal courts in determining matters of Texas law.  *Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex. 1992).

between insurer and insured." *Id.* at 664. The court held that "[t]his case demonstrate[d] the kind of 'avoidable conduct that causes injury' where public policy is best served by requiring the insured to bear the costs of punitive damages." *Id.*

However, "when the insured is a corporation or business that must pay exemplary damages for the conduct of one or more of its employees," and "other employees and management are not involved in or aware of an employee's wrongful act, the purpose of exemplary damages may be achieved by permitting coverage so as not to penalize the many for the wrongful act of one." *Fairfield Ins. Co.*, 246 S.W.3d at 670. When a party seeks damages under these circumstances, "courts should consider valid arguments that businesses be permitted to insure against them." *Id.*

Here, Tesco's summary-judgment evidence includes copies of Phathong's petition and the judgment he obtained against Tesco in the underlying lawsuit, as well as a pretrial order from the United States District Court, containing the parties' stipulated facts in that dispute. And Tesco recites in its brief some of the facts from the underlying lawsuit, which include allegations that "the person supervising the drill operations used an incorrect crossover sub and tried to force it on the drill collar by directing and allowing [Phathong] to hold the crossover sub with tongs." Phathong asserted that Tesco "knew or should have known" of the

20

improper and dangerous use of the equipment on the rig. However, Tesco's evidence does not conclusively establish the extent to which other Tesco employees and management were involved in or aware of the supervisor's wrongful conduct or the pervasiveness of the complained-of practice. *See Res-Care*, 529 F.3d at 664; *see also Fairfield Ins. Co.*, 246 S.W.3d at 670. Thus, as Steadfast asserts, fact issues preclude summary judgment in favor of Tesco.

We hold that Tesco conclusively established that insurance coverage for the punitive damages awarded against it is not excluded under the language of the Policies. However, Tesco has not conclusively established that the punitive damages awarded against it are insurable as a matter of Texas public policy. Accordingly, we hold that the trial court did not err in denying Tesco summary judgment.

We overrule Tesco's second issue.

### Reservation of Rights

In its third issue, Tesco argues that "Steadfast is estopped, or has waived, its asserted coverage defenses" because it "defended Tesco unconditionally and without a reservation of rights until after the trial." *See State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 550 (Tex. App.—Dallas 1990, no writ) (applying *Farmers Texas Cnty. Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 521–22 (Tex.

21

Civ. App.—Austin 1980), *abrogated by Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773 (Tex. 2008)).

An insurer "does not bear the burden of showing that it does not have a policy in place to cover a particular risk; the insured bears the burden to show that a policy is in force and that the risk comes within the policy's coverage." *Ulico Cas. Co.*, 262 S.W.3d at 781–82. Whether punitive damages for gross negligence are insurable depends on whether (1) the plain language of the policy covers the damages and (2) Texas public policy allows or prohibits coverage under the circumstances of the case. *See Fairfield Ins. Co.*, 246 S.W.3d at 655. Thus, it is Tesco's burden to show that Texas public policy allows coverage for the punitive damages awarded against it under the circumstances of this case.

Further, an insurance contract that contravenes public policy is not enforceable as a matter of law. *See Fairfield*, 246 S.W.3d at 663–65, 671 n.5 (citing *James v. Fulcrod*, 5 Tex. 512, 520 (1851) ("[C]ontracts against public policy are void and will not be carried into effect by courts of justice. . . .")). And there is "no right of noncoverage that is subject to being waived by the insurer, even by assumption of the insured's defense with knowledge of facts indicating noncoverage and without obtaining a valid reservation of rights or non-waiver agreement." *Ulico Cas. Co.*, 262 S.W.3d at 781–82 (abrogating *Wilkinson*, 601

22

S.W.2d at 521–22). Thus, Steadfast did not waive its public policy issue by not reserving its rights.

We overrule Tesco's third issue.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.